```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

ROBERT SALTERS,

                 Plaintiff,        15-CV-6040

      v.                  **DECISION
                                         and ORDER**

HEWITT-YOUNG ELECTRIC, LLC,

                 Defendant.

_____

## **INTRODUCTION**

Plaintiff Robert Salters ("plaintiff") commenced this action against Hewitt Young Electric, LLC ("Hewitt Young" or "defendant"), seeking damages for racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to e-17 ("Title VII"), Article 15 of the New York State Executive Law, Human Rights Law § 290 et seq. (the "NYSHRL"), and 42 U.S.C. § 1981 ("§ 1981"). Specifically, plaintiff, who is African American, claims that he was subjected to race discrimination based on Hewitt Young's failure to hire him based on his race, leading to plaintiff's termination by Hewitt Young's subcontractor and a continued refusal to employ him.

Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), arguing that (1) plaintiff has failed to establish a *prima facie* case of discrimination; (2) defendant had legitimate, non-discriminatory reasons for not hiring plaintiff that

were not pretextual; and (3) plaintiff has failed to establish a *prima facie* case of retaliation. Plaintiff opposes defendant's motion, arguing that there are genuine issues of material fact that necessitate a jury trial. For the reasons set forth below, the Court finds that defendant has established its entitlement to judgment as a matter of law. Accordingly, its motion for summary judgment is granted.

## **BACKGROUND**

The following facts are taken from the respective statements of fact, affidavits, and exhibits submitted by plaintiff and defendant.

Plaintiff is an African American electrician. He works as a journeyman wireman and obtains work though his union, the International Brotherhood of Electrical Workers, Local Union #86 ("Local #86"). Local 86 refers plaintiff to various jobs offered by contractors. Defendant engages in industrial, commercial, and residential electrical work in schools, retail spaces, restaurants, and offices, and receives referrals from Local 86. The relationship between Local 86 and defendant is governed by a collective bargaining agreement.

Plaintiff first worked for defendant in 2009. Plaintiff testified at deposition that he was treated respectfully on this job and was not teased because of his race. Plaintiff voluntarily left this job due to a death in his family.

Plaintiff began working for defendant again on July 2, 2013. Plaintiff worked on various projects between July 2, 2013 and September 27, 2013, including at Charlotte High School, School 17, SUNY Geneseo, and the Batavia Casino. Plaintiff maintains that he would not have been permitted to move from project to project if his job performance had been lacking. Plaintiff testified at deposition that he was treated respectfully throughout this time period and was not disparaged based on his race.

During his work at the Batavia Casino, plaintiff was involved in an incident where a supervisor, Mark Spall, was injured in the course of unloading a large toolbox from a truck. Mr. Spall has submitted a sworn declaration in which he states that he believed his injury was caused by plaintiff. Plaintiff disputes this account, claiming that Mr. Spall did not report the injury contemporaneously and that plaintiff would not have been called back to the work site had he caused an injury.

Plaintiff was laid off by defendant on September 27, 2013, and hired again on October 1, 2013. Plaintiff worked three additional days before being laid off again, due to completion of the job.

According to defendant, Mr. Spall reported to Hewitt Young management that plaintiff was a poor and inefficient worker, and Hewitt Young therefore determined that it would not hire plaintiff again. Under the collective bargaining agreement, defendant has the right to reject any applicant for employment. Plaintiff disputes defendant's characterization of his work, and maintains that no one

at Hewitt Young ever complained about his work and that he would not have been called back to the job at the Batavia Casino if his workmanship had been poor.

In December 2013, plaintiff received a referral to defendant from Local 86 to work on the Rochester City School District Modernization Project (the "RCSD Project"). He reported to defendant's offices on December 6, 2013. According to plaintiff, Gregory Young, the President of Hewitt Young, came into the waiting room and told plaintiff to leave and that he would not take plaintiff's referral. Mr. Young maintains that plaintiff arrived late, was disheveled, and appeared to be intoxicated, which plaintiff disputes. The parties agree that Mr. Young never said anything to plaintiff related to his race. In fact, plaintiff testified at deposition that no one at Hewitt Young ever said anything to him about his race.

On December 23, 2013, after having rejected plaintiff's referral, Hewitt Young hired Leonard Miller, an African American electrician, to work on the RCSD project. Hewitt Young added another African American journeyman electrician, Carnell White, to the RCSD project in January 2014.

On or about December 24, 2013, Local 86 referred plaintiff to a job for Unified Electric, a subcontractor for defendant on the RCSD Project. Hewitt Young management observed plaintiff working for Unified Electric on the RCSD Project and informed Unified Electric's

management that they did not want plaintiff working on Hewitt Young jobs. Unified Electric laid plaintiff off on or about December 27, 2013. Unified Electric replaced plaintiff with another African American electrician, whom defendant did not ask Unified Electric to terminate.

Plaintiff filed a complaint with the EEOC on or about March 18, 2014. The EEOC issued a "no probable cause" determination and a right to sue letter on October 31, 2014. Plaintiff thereafter commenced the instant action on January 21, 2015.

## DISCUSSION

### I. Standard of review

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the Court will grant summary judgment if the moving party demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *See Scott v. Harris*, 550 U.S. 372, 380 (2007), citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

## II. **Plaintiff has failed to establish a *prima facie* case of disparate treatment**

Plaintiff's Amended Complaint (the operative pleading in this matter) alleges claims of disparate treatment and retaliation pursuant to Title VII, the NYSHRL, and § 1981. These causes of action are generally evaluated under the same substantive legal standards. *See Patterson v. Cty. of Oneida*, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981."); *Betterson v. HSBC Bank, USA, N.A.*, 139 F. Supp. 3d 572, 585 (W.D.N.Y. 2015) ("The standards for evaluating employment discrimination claims under Title VII and the NYSHRL are identical.").

The legal sufficiency of a claim for disparate treatment is "assessed using the burden shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792(1973)." *Betterson*, 139 F. Supp. 3d at 585. Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. "To establish a *prima facie* case, a plaintiff must demonstrate: '(1) [he] was within the protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.'" *Id.* (quoting *Leibowitz v. Cornell*

*Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). Once the plaintiff establishes a *prima facie* discrimination case, the burden shifts to the defendant to articulate legitimate, non-discriminatory reasons for the adverse employment action. If the defendant does so, the plaintiff can no longer rely on the *prima facie* case, and must demonstrate that the reasons offered by the defendant were a pretext for discrimination. *See id.*

Here, defendant argues that plaintiff has failed to establish a *prima facie* case of disparate treatment because the circumstances surrounding defendant's failure to rehire him (and subsequent request that he be terminated by Unified Electric) do not give rise to an inference of discrimination. The Court agrees.

The fourth element of a *prima facie* claim for discrimination is a "flexible one that can be satisfied differently in differing factual scenarios." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). For example, "[a]n inference of discrimination can be drawn from circumstances such as the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action]." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (internal quotation omitted).

While the burden of setting forth a *prima facie* case of discrimination is modest, it is clear that a plaintiff must identify some evidence from which a trier of fact could conclude that the defendant was motivated by discriminatory intent. *See Grillo v. N.Y. City Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (a plaintiff alleging discrimination "must come forward with at least some credible evidence that the actions of the [defendants] were motivated by racial animus or ill-will"). Plaintiff has identified no such evidence in this case. It is undisputed that no one associated with Hewitt Young ever made any derogatory comments regarding plaintiff's race, and plaintiff himself testified that he was consistently treated with respect on the various Hewitt Young jobs on which he was employed. Plaintiff also has produced no evidence that non-African American employees were treated more favorably than he was. Although plaintiff claimed that other employees were not terminated despite smelling of alcohol at work, he testified at deposition that he was referring to both Caucasian and African American employees and that he did not know whether the foreman was aware of the alcohol. This testimony is plainly insufficient to establish that other employees were treated more favorably than plaintiff based on race.

Additionally, the undisputed fact that defendant hired multiple African American electricians within one month of declining to re-hire plaintiff measures strongly against any inference of discrimination. *See, e.g., White v. Pacifica Found.*, 973 F. Supp. 2d

363, 381 (S.D.N.Y. 2013) ("The fact that Plaintiff was replaced by a member of the same protected class further undermines any inference of discriminatory intent"); *Rodriguez v. N.Y.C. Health & Hosps. Corp.*, 2015 WL 5229850, at *5 (E.D.N.Y. Sept. 8, 2015) ("It is extremely difficult, if not practically impossible to establish discrimination where, as here, plaintiff was passed over so an employer can hire another member of plaintiff's same protected class." (internal quotation marks and citation omitted)). Plaintiff argues that defendant's hiring of other African Americans is not probative in this case because the RCSD Project had target goals for minority participation, but has offered no explanation for how defendant's acceptance of a contract with minority hiring goals is evidence of discrimination. Moreover, the existence of minority hiring goals on the RCSD Project does not negate the fact that defendant hired other African American electricians instead of plaintiff, which strongly suggests that defendant's rejection of plaintiff was based on factors other than his race.

In sum, this is a case in which plaintiff has "done little more than cite to [his alleged] mistreatment and ask the court to conclude that it must have been related to [his] race. This is not sufficient." *Grillo*, 291 F.3d 231. Plaintiff has failed to establish a *prima facie* case of discrimination, and defendant is entitled to judgment in its favor.

### III. **Plaintiff cannot show pretext**

Defendant has also argues that, even assuming plaintiff had made out a *prima facie* case of discrimination, defendant had legitimate,

non-discriminatory, non-pretextual reasons for its actions towards plaintiff - namely, that plaintiff's work was poor, that he caused Mark Spall to be injured, and that he arrived at the Hewitt Young offices disheveled and smelling of alcohol. Plaintiff argues that defendant's asserted rationales are pretextual. The Court agrees with defendant that plaintiff has failed to meet his burden of showing pretext and that, in the alternative, defendant is entitled to summary judgment on this basis.

A plaintiff cannot not meet the burden of showing pretext merely by calling into question the credibility of an employer's proffered rationale for its actions. *See Forte v. Liquidnet Holdings, Inc.*, 2015 WL 5820976, at *11 (S.D.N.Y. Sept. 30, 2015), *aff'd*, 2017 WL 104316 (2d Cir. Jan. 10, 2017) ("Plaintiff does not satisfy her burden at the pretext stage simply by undermining the credibility of Defendants' proffered rationale for discharge."); *see also Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 142 (2d Cir. 1993) ("a Title VII plaintiff does not necessarily meet its burden of persuasion by convincing the factfinder that the employer's non-discriminatory explanation is not credible; rather, the trier of fact must find that the plaintiff has proven its explanation of discriminatory intent by a fair preponderance of the evidence"); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1225 (2d Cir. 1994) ("The Supreme Court teaches that a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, *and* that discrimination was the real reason. . . . What this means in the summary judgment context is that the plaintiff must

establish a genuine issue of material fact . . . as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.") (internal quotations and citations omitted and emphasis in original). Here, as discussed at length above, plaintiff has identified no evidence supporting the conclusion that defendant's actions were based on his race. As a result, even were a jury to conclude that defendant's proffered reasons for its actions were false, it still could not conclude that discrimination was the real reason. Because plaintiff cannot show pretext, defendant is entitled to judgment in its favor on his discrimination claim.

## IV. **Plaintiff has failed to establish a *prima facie* case of retaliation**

Turning lastly to plaintiff's retaliation claim, defendant argues that plaintiff cannot make out a *prima facie* case of retaliation because the adverse employment actions at issue occurred in December 2013, and plaintiff did not file his EEOC charge until March 2014. In opposition, plaintiff argues (1) that he told his union in December 2013 that the reasons defendant gave for refusing to hire him were not true and (2) that defendant retaliates against him every time he is "skipped over" for jobs at Hewitt Young or any of its subcontractors. For the reasons discussed below, plaintiff's arguments are unavailing.

To establish a *prima facie* retaliation claim, plaintiff is required to show "1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse

employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotations omitted). Plaintiff cannot meet this standard. With respect to his EEOC complaint, while this is undisputedly protected activity, it occurred <u>after</u> defendant had determined not to hire plaintiff. Plaintiff's "continuing retaliation" theory is not viable, because it is well-established that "[i]f an employer's conduct before and after an employee complaint is consistent, the post-complaint conduct is not retaliatory." *Wright v. N.Y. City Off-Track Betting Corp.*, 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008). Here, there is no evidence that defendant's conduct towards plaintiff changed after he filed his EEOC charge - to the contrary, defendant had already determined that plaintiff was not to be hired on any of its jobs well before plaintiff made his complaint. Plaintiff therefore cannot show a causal connection between his EEOC complaint and any adverse employment action.

With respect to plaintiff's allegation that he informed his union that defendant's reasons for refusing to fire him were false, it is in no way clear that this constitutes protected activity. Plaintiff does not allege that he told the union he believed defendant had engaged in racial discrimination. In order to constitute protected activity, an employee's complaint must have been aimed at unlawful discrimination. *See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). Moreover, plaintiff has not alleged nor presented any evidence that anyone at

Hewitt Young was aware of his statements to his union. Defendant cannot have retaliated based on a complaint of which it was not aware. *See Grant v. N.Y. State Office for People with Developmental Disabilities*, No. 12-CV-4729, 2013 WL 3973168, at *9 (E.D.N.Y. July 30, 2013) (plaintiff who alleged that he complained to his union representative had not stated a retaliation claim because there was no allegation that the union representative contacted the employer or that plaintiff made complaints directly to the employer).

For these reasons, plaintiff has failed to establish a *prima facie* claim for retaliation. Defendant is therefore entitled to judgment as a matter of law on plaintiff's retaliation claim.

## CONCLUSION

For the reasons set forth above, the Court grants defendant's motion for summary judgment (Docket No. 48). The Clerk of the Court is instructed to enter judgment in favor of defendant and to close the case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                         s/Michael A. Telesca
                                         MICHAEL A. TELESCA
                                     United States District Judge

Dated:    Rochester, New York
           June 2, 2017